UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

CIVIL ACTION NO. 0:20-CV-00077-WOB
RONALD TUTTLE,                                                                                          PLAINTIFF,

V.            **REPORT AND RECOMENDATION**

UNITED STATES OF AMERICA,                                                                  DEFENDANT.

*** *** *** ***

Ronald Tuttle, a federal prisoner, initiated this action pursuant to 28 U.S.C. § 2674, alleging the United States Bureau of Prisons ("BOP") acted negligently by failing to maintain safe, sanitary conditions within the cells occupied by Tuttle [R. 1]. The Court recognizes that Tuttle is proceeding pro se and construes his petition more leniently. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Castro v. United States*, 540 U.S. 375, 381-83 (2003). The matter before the Court is the United States' Motion for Summary Judgment. [R. 89]. Having considered the motion, fully reviewing the record, and being sufficiently advised, the Court RECOMMENDS that summary judgment be granted in favor of the United States.

## I. FACTS & PROCEDURAL HISTORY

Plaintiff, Ronald Tuttle, was transferred to and housed in the Special Housing Unit ("SHU") at FCI Ashland from June 2019 through November 2019. [R. 1 at pg. 3–4]. During those months, Tuttle was housed in different cells along Ranges 3 and 4. [R. 89-2 at pg. 8]. Tuttle alleges black mold growth in and around leaking toilets and cracked walls. [R. 1 at pg. 2]. Moreover, Tuttle further alleges inadequate ventilation as he claims the vents in said cells were blocked by a piece of metal welded atop the vents. [R. 1 at pg. 3]. Toward the end of his sixth month in the

Ashland SHU, around November 19, 2019, he developed chest congestion and a sore in his left nostril that bleeds [R. 90-1 at pg. 10]. On December 20, 2019, after being transferred to another facility, Tuttle was diagnosed with chronic asthma along with acute bronchitis and pneumonia according to BOP medical records. [R. 90-1 at pg. 11]. On January 10, 2020, the sore in his left nostril was confirmed as a lesion. [R. 90-1 at pg. 12]. Tuttle was seen again on February 19, 2020, the physician noted his affliction with chronic obstructive pulmonary disease ("COPD"). [R. 90-1 at pg. 13].

Tuttle initially filed an administrative complaint with the Bureau of Prisons and, after denial of that administrative complaint, and in full compliance with 28 U.S.C. § 2675(a), Tuttle filed suit in the U.S. District Court for the Eastern District of Kentucky on June 29, 2020. [R. 1]. In his pleadings Tuttle alleges toxic mold was present in the cells of the SHU, the air vents were obstructed, and the cells were small enough so that he was forced to inhale the toxic mold that led to him developing a nose lesion, COPD, and asthma. [R. 1]. Tuttle originally requested relief in the form of immediate release from prison and $20 million. [R. 1] While awaiting an answer from the United States, he filed a motion for default judgment on October 26, 2020. [R. 23]. The Court denied the Tuttle's motion, [R. 25], and gave the United States until November 18, 2020, to answer or otherwise respond to his complaint. [R. 20]. Tuttle filed two further motions for default judgment before November 18, 2020, [R. 27; R. 28], which were denied. [R. 29]. Fact discovery closed on August 16, 2021. [R. 77].

The United States filed the instant motion for summary judgment on December 15, 2021. [R. 89]. The United States alleges that there is no genuine issue of material fact concerning the issues of breach and causation. [*Id*.]. Therefore, the United States asserts it is entitled to judgment as a matter of law. [*Id*.]. Plaintiff responded. [R. 90, 91]. Defendant replied. [R. 92]. Plaintiff further responded. [R. 93, 96].

## II. STANDARD OF REVIEW

### A. SUMMARY JUDGMENT

Under Rule 56, "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Such a motion then "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id*. at 324 (internal quotation marks omitted). This is so because "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Id*. at 323–24. To avoid summary judgment, the non-movant must come forward with evidence on which a jury could reasonably find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

The following factors bear consideration by a court when entertaining a motion for summary judgment:

1. Complex cases are not necessarily inappropriate for summary judgment.

2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.

3. The movant must meet the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case.

4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.

5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: whether the evidence

      presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

6. As on federal directed verdict motions, the "scintilla rule" applies, *i.e.,* the respondent must adduce more than a scintilla of evidence to overcome the motion.

7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8. The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment."

9. The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10. The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

*Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989).

      "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex*, 477 U.S. at 324. When reviewing a motion for summary judgment, "this Court must determine whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251-52). "[T]he existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland v. Mich. Dept. of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003) (citing *Anderson*,

477 U.S. at 251). The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id*. (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)). In such a case, summary judgment is warranted. *Alabama v. North Carolina*, 560 U.S. 330, 344 (2010); *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

## B. FEDERAL TORT CLAIMS ACT

The Federal Tort Claims Act (FTCA) serves as a derogation of sovereign immunity by stating, "the United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Pursuant to the act, exclusive jurisdiction of civil claims against the United States was granted to United States District Courts and the substantive tort law selected was the tort law of the state where the claim's act or omission occurred.

> [T]he district courts… shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on or after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b).

The FTCA dictates that the federal government be liable in tort "in the same manner and to the same extent that state law would impose liability on a private individual in similar circumstances." *Premo v. United States*, 599 F.3d 540, 548 (6th Cir. 2010) (quoting *Huffman v. United States*, 82 F.3d 703, 705 (6th Cir. 1996)). Putting it differently the act "waives sovereign

immunity to the extent that state-law [sic] would impose liability on a private individual in similar circumstances." *Premo*, 599 F.3d at 705 (quoting *Chomic v. United States*, 377 F.3d 607, 609-10 (6th Cir. 2004)); *see also United States v. Olson*, 546 U.S. 43, 45–46 (2005).

The applicable substantive law is determined based on the state where the action or omission occurred. 28 U.S.C. § 1346(b); *FDIC v. Meyer*, 510 U.S 471, 477-78 (1994). The alleged acts/omissions occurred while Tuttle was in detention at the FCI Ashland SHU located at KY-716, Ashland, KY 41102. [R. 1; R. 89-1 at pg. 3]. Therefore, Kentucky negligence law is applicable to the matter before the Court.

### C. KENTUCKY NEGLIGENCE LAW

In Kentucky, the elements of a negligence claim are: "duty, breach, causation, and damages." *Phelps v. Bluegrass Hosp. Mgmt.*, LLC, 630 S.W.3d 623, 628 (Ky. 2021) (quoting *Carter v. Bullitt Host, LLC*, 471 S.W.3d 288, 298 (Ky. 2015). Furthermore,

> A common law negligence claim requires proof of (1) a duty owed by the defendant to the plaintiff, (2) breach of that duty, (3) injury to the plaintiff, and (4) legal causation between the defendant's breach and the plaintiff's injury. *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88-89 (Ky. 2003) (citing *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245, 247 (Ky. 1992); *Lewis v. B & R Corp.*, 56 S.W.3d 432, 436 (Ky. App. 2001)). The standard of care applicable to a common-law negligence action is that of ordinary care-that is, "such care as a reasonably prudent person would exercise under the circumstances." *Slusher v. Brown*, 323 S.W.2d 870, 872 (Ky. 1959).

*Wright v. House of Imports, Inc.*, 381 S.W.3d 209, 213 (Ky. 2012).

Duty presents a question of law. *Pathways, Inc*, 113 S.W.3d at 89 (citing *Mullins*, 412 S.W.2d at 876). Both breach and injury are questions of fact. *Pathways*, 112 S.W.3d at 89 (citing *Lewis*, 56 S.W.3d at 436). Finally, causation presents a mixed question of law and fact. *Pathways*, 112 S.W.3d at 89 (citing *Deutsch v. Shein*, 597 S.W.2d 141, 145 (Ky. 1980)).

## III. ANALYSIS

The United States' motion for summary judgment asserts Tuttle "cannot establish that the BOP breached its duty of care." [R. 89-1 pg. 5]. Defendant argues that the Tuttle's statements stand as the only support of this proposition. [*Id.* pg. 6]. Furthermore, the United States offers that no BOP employees have made relevant complaints about the mold and blocked airflow. [*Id.*; R. 89-5].

Moreover, the Defendant asserts that, "[t]he record also lacks evidence that the six months Tuttle spent in the Ashland SHU caused him to have a nose [lesion], COPD, or asthma. [R. 89-1 pg. 7]. Defendant argues that the Plaintiff's medical records include no statement by any medical professional that links any diagnosis to mold, poor air quality, or small cell size. [*Id.*]. Moreover, the United States references information from the CDC and NIH to provide other possible causes for the conditions Tuttle is diagnosed with. [*Id.*].

The Court proceeds with an analysis of negligence in the summary judgment context with the understanding that the burden is on the movant to prove no genuine issue of material fact. Fed. R. Civ. P. 56; *Street*, 886 F.2d at 1479.

### A. DUTY

The FTCA does not create a cause of action, nor does it provide a means for enforcement of duty found in statute or regulation. *Myers v. United States*, 17 F.3d 890, 894 (6th Cir. 1994) (quoting *Howell v. United States*, 932 F.2d 915, 917 (11th Cir. 1991); *Sellfors v. United States*, 697 F.2d 1362, 1365 (11th Cir. 1983)). The FTCA only waives sovereign immunity when a private person would be liable under state tort law. *Id*. Under Kentucky tort law, "[e]very person owes a duty to every other person to exercise ordinary care in his activities to prevent foreseeable injury." *Dicks Sporting Goods, Inc. v. Webb*, 413 S.W.3d 891, 898 (Ky. 2013) (quoting *Grayson Fraternal Order of Eagles, Aerie No. 3788, Inc. v. Claywell*, 736 S.W.2d 328, 332 (Ky. 1987)). Possessor-

invitee negligence law offers one semi-analogous body of law for the Court to consider. "A possessor of land owes a duty to [the] invitee to discover unreasonably dangerous conditions on the land and either eliminate or warn of them." *Shelton v. Ky. Easter Seals Soc., Inc*, 413 S.W.3d 901, 909 (Ky. 2013) (citing *Ky. River Med. Ctr. v. McIntosh*, 319 S.W.3d 385, 388 (Ky. 2010)). Moreover, exposure cases such as *Davis v. Fisher Single Family Homes* and *Capital Holding Corp v. Bailey* highlight the possibility of liability for exposure to mold and asbestos in Kentucky tort law. *Davis v. Fisher Single Fam. Homes*, 231 S.W.3d 767 (Ky. Ct. App. 2007); *Cap. Holding Corp. v. Bailey*, 873 S.W.2d 187 (Ky. 1980). "

Tuttle provides the Court with multiple policies to support his assertion that the BOP has a duty to maintain inmate areas free of toxic mold and properly ventilated. [R. 63-3]. Tuttle offers 28 C.F.R. § 541.31(a), which regulates SHU conditions as to healthy and humane treatment. [R. 69-3]. The regulation requires living areas to be "well-ventilated. . . and maintained in a sanitary condition." [R. 69-3]; 28 C.F.R. § 541.31(a). Tuttle provides FBOP Program Statement 1600.11 (2017), which ensures ventilation of 10 cubic feet of fresh or recirculated air per minute per person be provided in inmate cells built prior to 1990.

The Federal Bureau of Prisons has acknowledged such a duty in their policy documents. The Commonwealth of Kentucky acknowledges the prevention of toxic mold exposure as a duty to the private citizen within its caselaw. There is no genuine issue of material fact in establishing the duty to keep the space free from mold that has been contested by the defendant.

### B. BREACH

Therefore, the Court moves to breach of said duty. Breach in Kentucky tort law is straightforward. Did the defendant breach the duty of care? *Pathways, Inc*, 113 S.W.3d at 89 (citing *Mullins*, 412 S.W.2d at 876). The application of this standard to the case at bar is whether or not the defendant breached the duty of care to keep the Plaintiff's cells free from mold and sanitary.

The defense has provided photographs of seven representative cells, as certified by facility's safety administrator, which show no mold, cells in sanitary condition, and no welded shut air vents. [R. 89-4 at pg. 61-67; R. 89-5].

Despite this showing by the United States, Tuttle has identified witnesses to support his assertion of breach. These five witnesses signed a document that reports that "there is inadequate ventilation in every SHU cell because the air vent has a piece of metal purposefully blocking off the air vent in each cell." [R. 91-1] (internal quotation omitted) (emphasis omitted). Moreover, the document states "there is black mold around every toilet where they have leaked and mold spores are in every room from excess moisture from leaking toilets upon Range 3 that we are forced to breathe in." [*Id.*] (internal quotation omitted) (emphasis omitted). Finally, the document reports "the SHU room sizes are inhumane in size and are 6ft wide by 8ft long…" [*Id.*] (internal quotation omitted) (emphasis omitted). The document is signed by alleged fellow inmates Nathaniel Effler, Derrick Houston, Hermes Chimaers, and Malcomb Simmons. [*Id.*]. While no discovery was completed regarding these witnesses the facts of this case must be construed in a light most favorable to the non-movant. *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 587. When witnesses exist to prove a genuine issue and the probable content of their testimony is disputed this amounts to a genuine issue of material fact. *Ditkof v. Owens-Illinois, Inc.*, 1114 F.R.D. 104, 106 (E.D. Mich. 1987) (citing *Celotex*, 477 U.S. at 328). Moreover, if the plaintiff has named a witness, as in Tuttle's case, it is the defendant's burden to prove that their testimony presents no genuine issue of material fact. *Celotex*, 477 U.S. at 328. Therefore, the Court assumes that the potential witnesses will corroborate the document allegedly signed on November 14, 2019. The direct conflict of the presence of mold and the absence of mold is a genuine issue of material fact in the breach element of the Plaintiff's negligence claim.

The document presents more than a scintilla of evidence. *Street*, 886 F.2d at 1479-80. The information within Tuttle's document leads this court to find, viewing the record in the light most favorable to the nonmovant, there is a genuine issue of material fact concerning the element of breach.

## C. CAUSATION

Moving forward in the analysis the Court looks towards the causation element of negligence. Kentucky tort law, like most jurisdictions, divides the causation element of negligence into two components: but-for causation and proximate cause. *Howard v. Spradlin*, 562 S.W.3d 281, 287 (Ky. Ct. App. 2018). "But-for causation requires the existence of a direct, distinct, and identifiable nexus between the defendant's breach of duty and the plaintiff's damages such that the event would not have occurred 'but for' the defendants negligent or wrongful conduct in breach of a duty…" *Patton v. Bickford*, 529 S.W.3d 717, 730 (Ky. 2016). Proximate causation "captures the notion that, although conduct in breach of an established duty may be an actual but-for cause of the plaintiff's damages, it is nevertheless too attenuated from the damages in time, place, or foreseeability to reasonably impose liability upon the defendant." *Id*. at 731.

The United States argues that there is no genuine dispute of material fact that the United States was not the cause of Tuttle's ailments. The defendant provided admissions by Tuttle of behavior engaged in prior to his detainment that is a well-known cause of COPD, namely smoking. [R. 89-2 at pg. 22, lines 19-23; *id*. at pg. 23 lines 3-24]. The defense provides the court with the Centers for Disease Control (CDC) webpage listing smoking as the typical cause of COPD. [R. 89-1 at pg. 7]; see *Smoking and COPD*, CDC, https://www.cdc.gov/tobacco/campaign/tips/diseases/copd.html (last visited May 31, 2022). Tuttle admits to smoking up to half a pack of cigarettes a day from 2005 until incarceration. [R. 89-2 at pg. 22-23]. Moreover, the defendant provided the court with a Nation Heart, Lung, and Blood Institute, part of the National Institute

for Health (NIH), webpage pertaining to asthma which states that asthma has no known causes and can be triggered by various allergens. [R. 89-1 at pg. 7]; see *Asthma: Causes and Triggers*, NIH: National Heart, Lund and Blood Institute, https://www.nhlbi.nih.gov/health/asthma/causes (last visited May 31, 2022).

Tuttle has provided medical records as proof of causation. He asserts that he entered the Ashland facility not diagnosed with COPD or Asthma and then developed breathing issues and a nose lesion within his time at the Ashland facility. [R. 93-1 at pg. 10]. Subsequently, shortly after leaving the facility he was diagnosed with COPD and Asthma. [R. 93-1 at pg. 13]. Tuttle has offered no further evidence that the mold he alleges was present in his cells during the period he was imprisoned in the Ashland facility is the cause of his COPD or Asthma. He relies totally upon the correlation of diagnoses and the period of his stay at the Ashland SHU.

The Court concerns itself first with but-for causation such that there is a direct link between the alleged mold and the COPD and/or Asthma. Tuttle provides no medical link between the development of his ailments and the alleged mold and has identified no potential witness that might do so at trial. He has produced no potential witness to state that but-for the existence of mold he would not have developed his ailments. He provides only the fact that he was diagnosed with the ailments during and after his stay at the Ashland SHU. The moving party, the United States, need only show the absence of evidence to support the case. *Celotex*, 477 U.S. at 325.

Tuttle has submitted nothing to the record to establish that the alleged mold is the cause of the ailments he has been diagnosed with. Citing to *Estate of Carter v. Detroit*, 408 F.3d 305, 310 (6th Cir. 2005), Tuttle argues that he need not provide verifying medical evidence since the signs were obvious to a lay person. [R. 93 at pg. 4]. *Estate of Carter* pertains to failure to provide adequate medical care in pre-trial detainees and was initiated under 42 U.S.C. § 1983, which requires proving the objective part, the sufficiently serious medical need, and the subjective part,

the defendant's possession of sufficiently culpable state of mind in denying the medical care. *Estate of Carter*, 408 F.3d at 310. *Estate of Carter'*s § 1983 issue is distinguishable with the FTCA Kentucky negligence claim that is at bar.

This Court does consider a similar exception to the requirement for expert testimony in medical malpractice cases. There is a similar exception for when expert testimony is not required "where the common knowledge or experience of laymen is extensive enough to recognize or infer negligence from the facts." *Baylis v. Lourdes Hosp., Inc.*, 805 S.W.2d 122, 124, n.3 (Ky. 1991) (quoting *Jarboe v. Harting*, 397 S.W.2d 775, 778 (Ky. 1965); *Meiman v. Rehab. Ctr., Inc.*, 444 S.W.2d 78 (Ky. 1969); *Maggard v. McKelvey*, 627 S.W.2d 44 (Ky. Ct. App. 1981)). Even if the Court applies this standard to the case at bar, which is not medical negligence, the evidence is not sufficient to establish that the common experience of a layman could determine the burden of causation was met.

The element of but-for causation is not supported by evidence that would result in a jury verdict in favor of the nonmovant. Thus, there is no genuine issue of material fact for the determination of breach, therefore the movant is entitled to judgment as a matter of law. The Court must grant summary judgement if at least one essential element lacks evidence that would result in a jury verdict in favor of the nonmovant. *Ford v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Causation is an essential element of negligence. *Mullins* 839 S.W.2d at 845.

## IV. RECOMMENDATION

Having fully considered the matter, and the Court being otherwise sufficiently advised,

**IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment [R. 89-6] be **GRANTED**.

*** *** *** ***

The parties are directed to 28 U.S.C. § 636(b)(1) for a review of appeal rights governing this Recommended Disposition. Particularized objections to this Recommended Disposition must be filed with the Clerk of the Court within fourteen days of the date of service or further appeal is waived. Fed. R. Civ. P. 72(b)(2); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). A\ general objection that does not "specify the issues of contention" is not enough to satisfy the requirement of written and specific objections. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are not enough to preserve the right of appeal. *Howard v. Secretary of HHS*, 932 F.2d 505, 508–09 (6th Cir. 1991). A party may respond to another party's objections within fourteen days of being served with a copy of those objections. Fed. R. Civ. P. 72(b)(2).

Signed July 14, 2022.



Signed By:
*Edward B. Atkins* EBA
United States Magistrate Judge